UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

-vs-                                                                                Case No.  8:04-cr-348-T-24 TGW

RONALD J. TRUCCHIO

_____/

**ORDER**

This cause comes before the Court on Defendant Trucchio's Motion for an Evidentiary Hearing and Jury Polling Following Verdict.  (Doc. No. 630).  The Government opposes the motion.  (Doc. No. 638, 643).

**I.  Background**

On November 29, 2006, a jury found Defendant Trucchio and his co-defendants guilty of conspiracy to conduct or participate in the conduct of an enterprise either through a pattern of racketeering activity or through the collection of an unlawful debt.  (Doc. No. 621).  The jury also found that Defendant Trucchio and one or more of the members of the crew knowingly and intentionally distributed and possessed with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine during the conspiracy charged in count one of the Superseding Indictment, and that Defendant Trucchio and one or more of the members of the criminal crew knowingly and intentionally conspired to distribute and to possess with the intent to distribute five kilograms or more of cocaine during the conspiracy charged in count one of the Superseding Indictment.  (Doc. No. 621).

Immediately after the Jury rendered its verdict, the Court publicly polled each of the jurors as to their verdict and each juror affirmed that the verdict read by the courtroom deputy clerk was their individual verdict as well as the verdict of the jury as a whole.

In the instant motion, Defendant Trucchio alleges the following: On November 30, 2006, the day after the jury verdict, Juror #3 telephoned Defendant Trucchio's lawyer, Joseph Corozzo, and told him that she intended to write a letter to the judge describing the coercion she had felt during the deliberations and other incidents during the trial process that she believed needed to be brought to the Court's attention. The next day, December 1, 2006, the Court received a letter from Juror #3, a copy of which had been forwarded to Defendant Trucchio's counsel, Joseph Corozzo.

In that letter, Juror #3 states that she was coerced to change her not-guilty vote to guilty as to Defendant Trucchio. She further states that "[F]rom the beginning there were those [jurors] whose opinions, perceptions, or memory was not only formed by court evidence but also by previous knowledge revealed in the jury room such as, having read Cigar City Mafia or experience as a drug dealer at a young age with a family member who had become an addict." (Doc. No. 630-4). Based on this letter, Defendant Trucchio moves the Court to conduct an evidentiary hearing and question the jury regarding improper discussions as to "extraneous information or outside influence."

**II.  Discussion**

In discussing allegations of jurors improperly considering extrinsic evidence during juror deliberations, the Eleventh Circuit has stated:

> [T]he theory of our system is that the conclusions to be reached in a case will be
> induced only by evidence and argument in open court, and not by any outside

> influence, whether of private talk or public print. . . . [H]owever, we recognize that since it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote . . . due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.
>
> When jurors consider extrinsic evidence, we require a new trial if the evidence poses a *reasonable possibility of prejudice* to the defendant. Prejudice is not presumed. The defendant has the burden of demonstrating prejudice by a preponderance of credible evidence. Such prejudice may be shown by evidence that extrinsic factual matter tainted the jury's deliberations. However, since it is the court's duty to ensure that the jury verdict was in no way tainted by improper outside influences, the court must investigate the asserted impropriety upon merely a colorable showing of extrinsic influence. Subject only to Federal Rule of Evidence 606(b), the court may use whatever inquisitorial tools are necessary and appropriate to determine prejudice. If after this inquiry the court determines that the defendant met his burden of showing by a preponderance of the evidence the likelihood of jury prejudice, the burden shifts to the government to prove that the consideration of the extrinsic evidence was harmless. . . . [T]he nature of the information learned by the jurors and the manner in which it was revealed is relevant to this determination.

U.S. v. Rowe, 906 F.2d 654, 656-657 (11th Cir. 1990)(internal citations, quotations, and footnotes omitted).

There is a presumption of jury impartiality. Therefore, the Court's "duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." U.S. v. Barshov, 733 F.2d 842, 851 (11th Cir. 1984)(citation omitted). Thus, "[t]o justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show clear, strong, substantial and incontrovertible evidence . . . that a specific, nonspeculative impropriety has occurred." U.S. v. Cuthel, 903 F.2d 1381, 1383 (11th Cir. 1990)(quotations and citations omitted). "In other words,

there must be something more than mere speculation." Barshov, 733 F.2d at 851 (citation omitted).

Furthermore, when considering whether allegations merit investigation, the Court must be mindful of Federal Rule of Evidence 606(b). Rule 606(b) generally prohibits the admission of juror testimony to impeach a verdict, but it contains three exceptions, including one for situations where extraneous prejudicial information is improperly brought to the jury's attention. Specifically, Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

By prohibiting the admission of juror testimony to impeach a verdict, Rule 606(b) "prevent[s] the harassment of jurors, support[s] the finality of verdicts, and preserve[s] the community's trust in a system that relies on the decisions of lay people." U.S. v. Sjeklocha, 843 F.2d 485, 488 (11th Cir. 1988)(citations omitted).

In the instant case, three allegations are made in Juror #3's letter: (1) that she was coerced to change her not-guilty vote to guilty as to Defendant Trucchio; (2) that one or more jurors' opinions, perceptions, or memory were affected by the experience of a juror as a drug dealer at a young age with a family member who had become an addict; and (3) that one or more jurors' opinions, perceptions, or memory were affected by the fact that a juror had read the book, Cigar

City Mafia. For the reasons stated below, the Court finds that Defendant Trucchio has failed to make a colorable showing of juror misconduct or of an extrinsic influence on the jury that requires the Court to further investigate.

### A. Coercion

Juror #3 alleges in her letter that she was coerced to change her not-guilty vote to guilty. However, as explained above, Rule 606(b) prohibits the Court from inquiring into any statements that were made during the course of the jury's deliberations that influenced the juror to assent to or dissent from the verdict. What Juror #3 complains about – anger, frustration, disagreements, emotional reactions–are often part of the give and take of the deliberation process and intrinsic influences. As such, this allegation cannot support Defendant Trucchio's request for an evidentiary hearing and jury questioning.

### B. Prior Experiences

Juror #3 also alleges that one or more jurors' opinions, perceptions, or memory were affected not only by court evidence, but also by the experience of a juror as a drug dealer at a young age with a family member who had become an addict. However, this allegation does not fall within the exception of Rule 606(b) to which a juror can testify about when attempting to set aside a verdict, since this allegation does not concern an external influence on the jury. See U.S. v. Duzac, 622 F.2d 911, 913 (5th Cir. 1980). Instead, this allegation merely equates to a personal experiences of a juror unrelated to the litigation. As one court has stated: "The proper time to discover such prejudices is when the jury is being selected and peremptory challenges are available to the attorneys. Although the jury is obligated to decide the case solely on the evidence, its verdict may not be disturbed if it is later learned that personal prejudices were not

put aside during deliberations." Id.   Accordingly, this allegation cannot support Defendant Trucchio's request for an evidentiary hearing or the questioning of the jurors regarding their deliberations..

Likewise, the allegation that one or more jurors' opinions, perceptions, or memory were affected by the fact that a juror had read the book, Cigar City Mafia, also does not concern an external influence on the jury.  Defense counsel states that the full title of the book is Cigar City Mafia: A Complete History of the Tampa Underworld and that the book is written about the Tampa mob and the relationship between the Tampa mob and crime families in New York, New Orleans, and Chicago.  However, Juror #3 did not allege that the book was brought into the jury room; instead, she only alleges that one or more of the jurors had previous knowledge from having read the book. The fact that a juror had read the book and revealed the same to the other jurors does not equate to a colorable showing of an extrinsic influence on the jury.  As such, this allegation cannot support Defendant Trucchio's request for an evidentiary hearing or the questioning of the jurors regarding their deliberations.

### III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant Trucchio's Motion for an Evidentiary Hearing and Jury Polling Following Verdict (Doc. No. 630) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 5th day of January, 2007.

SUSAN C. BUCKLEW
United States District Judge