UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO: 8:04-cr-348-CEH-TGW

RONALD J. TRUCCHIO

_____/

# **O R D E R**

This matter comes before the Court on Defendant's Motion for a Sentence
Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Docs. 1072, 1072-1). In the motion,
Defendant Ronald J. Trucchio requests a reduction in his life sentence to time served
followed by a five-year term of supervised release. The Defendant filed medical
records; letters from prison staff, friends and family; progress reports and continuing
education records; and other documents in support. Docs. 1072-2, 1072-3, 1074, 1074-
2–1074-9, 1090. The Government opposes the motion. Doc. 1078. Defendant filed a
reply. Doc. 1081. The Court heard argument on the motion on September 18, 2024,
which the Defendant attended via videoconference. Following the hearing, at the
Court's direction, the Defendant filed a proposed release plan (Doc. 1097), and the
Government filed a notice and updated notice regarding restitution owed and victims
notified (Doc. 1098, 1100). The Court, having carefully considered the motion and
being fully advised in the premises, will grant Defendant's Motion for a Sentence
Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) and will reduce Defendant's sentence
to time served with a ten-year term of supervised release.

## I.    BACKGROUND

On March 5, 2007, Defendant Ronald J. Trucchio was sentenced to a term of life imprisonment, followed by a five-year term of supervised release, following a guilty trial verdict to charges of RICO conspiracy, based on conduct that ended on June 29, 2005. Doc. 703. District Judge Susan C. Bucklew ordered that Trucchio's life sentence was to run concurrent with the 20-year prison term he was already serving following his conviction in a Southern District of Florida case.[1] *Id.* at 2. Trucchio represents that the 20-year sentence has been served in full, and counsel for both parties confirmed this fact at the hearing. Judge Bucklew issued a final amended judgment on April 13, 2007, after updating the correct restitution amounts and payee information.[2] Doc. 743. Trucchio was ordered to pay the following: $100 assessment; $25,000 fine; and $28,000 in restitution owed jointly and severally with his co-defendants. *Id.* at 5. The Court requested the Government file a notice indicating the status of any restitution, fees or assessments outstanding. On September 24, 2024, the Government filed a notice stating the amount of restitution plus interest owed equals $21,386.38. Doc. 1098 at 2. On October 4, 2024, Defendant filed a Notice, wherein he points out that the

---

[1] According to the Government, the Defendant's 20-year term of imprisonment imposed in the Southern District of Florida was ordered to run concurrent with a state sentence charged in Queens County, New York. Doc. 1078 at 3 n.2. Counsel confirmed the state sentence has been served in full.

[2] Total restitution of $28,000 was owed jointly and severally by Trucchio and one or more of his co-defendants, John Alite, Michael Malone, Pasquale Andriano, Kevin McMahon, to the following payees: Sky King Fireworks ($4,000); Sears ($20,000); and Papavero Funeral Home ($4,000). Doc. 743 at 5. A January 9, 2018 Progress Report reflects a restitution balance outstanding at that time of $22,520. Doc. 1074-3 at 1. Satisfactions of Judgment for McMahon and Malone were docketed July 23, 2024. Docs. 1083, 1084.

restitution was owed jointly and severally, and the Government's response fails to take into consideration what amounts the other Defendants paid toward restitution. Doc. 1099. Defendant additionally requests that any interest on restitution owed be waived because Judge Bucklew did not "check off" on the judgment that interest would be charged on the restitution. *Id.* at 3–4. Thereafter, the Government filed an amended and updated notice indicating that restitution and Trucchio's $100 assessment have been satisfied; $4,271.41 has been paid toward satisfaction of the $25,000 fine; and Trucchio's outstanding balance for the fine plus interest is $42,114.97. Doc. 1100.

Now 73 years old, Trucchio is incarcerated at Rochester Federal Medical Center (FMC), a Care Level 4 medical facility. *See* https://www.bop.gov/inmateloc/ (last accessed Nov. 21, 2024). Trucchio moves for compassionate release[3] under 18 U.S.C. § 3582(c)(1)(A), arguing that extraordinary and compelling reasons exist to warrant a reduction in his life sentence to time served. Specifically, he submits that his serious and debilitating medical conditions, his age, the number of years he has served, his extraordinary rehabilitation, the continuing threat of COVID-19, the conditions of his confinement endured during the entirety of the pandemic, his clean disciplinary

---

[3] This is Defendant's third motion for compassionate release. Defendant previously, through counsel, moved for compassionate release on March 26, 2020 (Doc. 1016). The Government opposed the motion (Doc. 1029). On December 22, 2020 Judge Bucklew denied Defendant's motion because he failed to demonstrate that he exhausted administrative remedies; Defendant "provide[d] little to no supporting medical documentation for any of the asserted health conditions;" Defendant has consistently been classified as a Care Level 2 inmate since June 2007, or stable, requiring only chronic care; and because "Trucchio still poses a danger to the community if released." Doc. 1050 at 4, 8–12. On November 10, 2021, Defendant submitted a 55-page letter/*pro se* motion seeking compassionate release. Doc. 1053. The motion was denied without prejudice for failing to comply with the local rules. Doc. 1054.

record, his service to the BOP facilities in which he has been incarcerated, and the letters of support demonstrating his character and that he would be a law-abiding citizen if released all combine to support a reduction in his sentence.

As for his medical conditions, Trucchio alleges he suffers from poor and deteriorating health. Most recently, in July 2024, he suffered an ischemic stroke. Doc. 1090. His motion outlines the following medical conditions from which he suffers: chronic, severe COPD with significant airway obstruction and dyspnea; spinal stenosis, spinal muscular atrophy and chronic back pain; acute osteoarthritis of his shoulders and extremities; degenerative joint disease, including a total left hip replacement and six other orthopedic surgeries; hyperlipidemia, high Caratine levels (indicative of liver disease) and chronic anemia; legal blindness for the past two to three years; high blood pressure (hypertension) that is only partially controlled through medication; largely wheelchair bound/limited physical movement; an enlarged prostate and a weakened bladder. Doc. 1072-1 at 17–18. Some of the conditions he developed while serving his life sentence and some were pre-existing but deteriorated because of his long-term incarceration. Trucchio has no use of his right arm, which predates his incarceration, but he now also suffers from arthritis in his only working (left) hand. *Id.* at 18–19. In August 2023, the Bureau of Prisons (BOP) transferred Trucchio to FMC Rochester which has a "Care Level 4" unit.[4]

---

[4] Care Level 4 is the BOP's highest care level for inmates. Care Level 4 services are only available at BOP Medical Referral Centers, which provide significantly enhanced medical services. *See* https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last accessed Sept. 6, 2024).

In December 2021, Trucchio was transferred to a Level 1 Trauma Center after passing out from dizziness and striking his head. Additionally, he is experiencing long-term memory loss attributable to long COVID, the head injury and/or his age-related deterioration. In support of his declining condition, Trucchio submits a letter from Dr. Andrew Edinger, M.D., the Clinical Director at USP Lewisburg, where Trucchio was incarcerated for 11 years. Dr. Edinger opines that Trucchio's long-term prognosis is not good and his medical state is worsening in all conditions. Doc. 1074. Trucchio submits that the medical and physical conditions from which he suffers are progressive, meaning they continue to worsen with his age. Additionally, he argues that COVID-19 continues to pose a risk, particularly considering his age and serious health conditions.[5] According to the CDC, adults 65 years and older are disproportionately impacted by COVID-19, noting that most COVID-19 deaths and hospitalizations in 2023 were among people 65 years and older. *See* https://www.cdc.gov/media/releases/2024/s-0228-covid.html (last accessed Sept. 17, 2024). Because of his vision and depth perception difficulties, Trucchio relies on a wheelchair and/or a quad cane to move about. Doc. 1072-1 at 21.

At the hearing, counsel confirmed that Trucchio has been incarcerated for over 21 years. His co-defendants have already been released from prison.[6] He argues that a

---

[5] Trucchio represents that he relies on four different inhalers to treat the respiratory conditions from which he suffers. Doc. 1072-1 at 20.

[6] Trucchio was tried with Co-Defendants Steven Catalano, Kevin McMahon, and Terry Scaglione. Doc. 624. Steve Catalano was sentenced to 192 months. Doc. 744. He was released in December 2016. Terry Scaglione was sentenced to 57 months. Doc. 721. He was released in May 2011. Kevin McMahon was sentenced to time served. Doc. 923. The other Defendants

reduction in his sentence will help avoid unwarranted sentence disparities among similarly situated defendants. Additionally, Trucchio argues imprisonment during the entirety of the pandemic was particularly harsh and could not have been envisioned at the time of sentencing. Communication with family was severely limited, access to religious services was suspended, and lockdowns were extensive and extended.

Trucchio submits that his extraordinary rehabilitation supports a reduction in his sentence. He contends that he does not present a danger to the community as evidenced by the letters submitted on his behalf from several BOP officials. Trucchio has been recognized as being respectful toward staff and other inmates. He has served as a mentor for younger inmates, performed his duties without being told, takes pride in his work, and is respectful to correctional officers. Doc. 1074-4. Trucchio has taken 3,700 hours of BOP programming, completed 2,400 hours of training as a housekeeping apprentice, and completed 480 hours of independent college study, earning an associate degree from an outside university. Doc. 1072-1 at 29–30, Doc. 1074-7.

Trucchio urges that his conduct over the past twenty years demonstrates that he will not be a danger to any individual or the community. He has taken every opportunity to rehabilitate himself without any realistic hope of release. He has completed extensive rehabilitative programming and 480 hours of independent college

---

that accepted plea deals were sentenced as follows: Michael Malone was sentenced to 63 months. Doc. 974. Pasquale Andriano was sentenced to 63 months. Doc. 275. John Alite was sentenced to 100 months. Doc. 969.

studies. He has the support of his family and has expressed extreme remorse for his criminal actions. He has a clean, for the most part, disciplinary record with no serious infractions at all and no incident since 2009. His motion represents that he has a release plan in which he would live with his niece and nephew in Hempstead, New York. Doc. 1072-1 at 34 n.32. At the hearing, the Court directed Defendant to file a detailed release plan. On September 24, 2024, the Defendant filed a proposed release plan stating he will live with his son Ronald Trucchio, Jr., and his son's girlfriend in their two-bedroom ADA compliant apartment building. Doc. 1097. The release plan outlines Defendant's arrangements for his medical care, health insurance, financial support, and criminal justice compliance, if he is released. *Id.* On October 15, 2024, the Court directed defense counsel to coordinate with the United States Probation Office to investigate the suitability of Defendant's proposed release plan. Doc. 1101. On November 12, 2024, U.S. Probation filed a report stating that a thorough home inspection has been completed and the proposed residence is suitable for Defendant and there are no safety concerns at the residence. (Doc. 1103).

Responding in opposition to Defendant's motion, the Government argues that while Trucchio has some medical conditions that potentially qualify as extraordinary and compelling circumstances, because he is a long-standing member of the Gambino Crime Family of La Cosa Nostra which he has never repudiated, Trucchio poses a significant danger to the public, if released. Doc. 1078. In support of its opposition, the Government cites to the indictment by which Defendant, and others, were charged under RICO with conducting the affairs of a criminal enterprise which included

murder, robbery, extortion, and drug distribution. Doc. 1078 at 2 (citing Doc. 231 at 5–7). Following a month-long trial, a jury found Trucchio guilty of count one of the superseding indictment charging him with conspiracy to conduct or participate in the conduct of an enterprise either through a pattern of racketeering or through the collection of an unlawful debt. Doc. 621. The jury further found Trucchio guilty, during the conspiracy, of knowingly and intentionally distributing and possessing with intent to distribute five kilograms or more of cocaine. *Id.* Based on the jury's verdict, the Court adjudicated Trucchio guilty and sentenced him to life in prison. Doc. 743.

In its response to Defendant's motion, the Government submits that the letters of support and the majority of the medical conditions Defendant cites were relied upon by Defendant in his first motion for compassionate release, which was denied by Judge Bucklew. Despite Defendant's claims of rehabilitation, the Government argues that rehabilitation alone does not constitute an extraordinary and compelling circumstance, and in any event, Defendant's failure to repudiate the Gambino Crime Family and assist the Government in its efforts to dismantle the criminal organization undercut his claim of rehabilitation.

The Government argues that even if Defendant could establish that extraordinary and compelling circumstances exist to support a reduction in his sentence, his motion should nevertheless be denied because Trucchio remains a danger to the community. In support of this argument, the Government cites to the trial in this case and the case from the Southern District of Florida which proved that Trucchio spent his adult life as a member of the Gambino Crime Family, first as an associate

and later as a captain. As a captain, Trucchio supervised criminal crews that engaged in a wide pattern of racketeering activities across New York, New Jersey, and Florida. The Government argues that given Trucchio's unique role in that organization, his release from prison will permit him to supervise and engage in violent criminal conduct and drug trafficking notwithstanding his disability and health complications. Doc. 1078 at 11–12. Further, the Government contends that Trucchio's premature release could infringe on his victim's rights to reasonable protection and the right to notice of any proceeding involving the Defendant's release. At the hearing, the Court directed the Government to file a notice identifying the victims and whether they wanted to be heard. On September 24, 2024, the Government filed a notice identifying the victims and advising the Court that the victims have been asked to provide input by October 3, 2024.[7] Doc. 1098. On October 4, 2024, the Government filed an updated notice stating that the Government has received no response from any victim.[8] Doc. 1100.

In his reply, Defendant first points out that the Government relies on sentencing guidelines that are no longer in effect, noting that the amendments to the Guidelines took effect on November 1, 2023, and apply to the instant motion. Doc. 1081 at 5–6. Specifically, the amended guidelines provide the Court with discretion to determine whether extraordinary and compelling reasons support a reduction in a defendant's sentence. Next, Defendant argues that the Government too narrowly construes his

---

[7] The victims identified by the Government were Sky Kings Fireworks, the department store Sears, an individual M.L., and Papavero Funeral Home. Doc. 1098 at 1.
[8] The Government's Notice states that it will supplement its notice in the event a response is received from any victim. Doc. 1100 at 3. To date, no supplement has been filed.

reasons that establish extraordinary and compelling circumstances. As for the Government's claim that simply following BOP rules is insufficient to demonstrate rehabilitation, Defendant submits his activities and efforts go well beyond simply following the rules, including the significance of his selection as a BOP "Suicide Watch Companion," a role that may only be filled by an inmate who is mature, responsible, and capable of dealing with an emergent and emotionally charged situation. Doc. 1081 at 7; Doc. 1072-1 at 32–33; Doc. 1072-3.

Defendant further argues that since all his co-defendants have long been released from prison and since he was offered a 15-year pretrial plea offer, his sentence should be reduced to time served to avoid unwarranted sentencing disparity. He attaches to his reply an affirmation of attorney Joseph Corozzo, who was involved in plea negotiations on Trucchio's behalf regarding the charges against Trucchio in the Southern District of Florida and the Middle District of Florida. Attorney Corozzo states that prior to both trials, the prosecutors from the U.S. Attorney's Office for the Middle District of Florida made a plea offer to Trucchio involving a prison term of approximately 15 years. Doc. 1081 at 13–14. Defendant next argues that his failure to repudiate the Gambino Crime Family or to assist the Government is not required for Defendant to accept responsibility for his conduct and is not evidence that he is a danger to the community if released. Lastly, Defendant points out that although the Government argues the pattern of racketeering activity with which Trucchio was charged included underlying activities of murder, robbery, extortion, and kidnapping, Defendant was never convicted of any of these crimes as the two predicate racketeering

acts upon which he was convicted involved narcotics distribution. Doc. 1081 at 9; *see* Doc. 621.

## II.   LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted).  Those limited circumstances are provided under 18 U.S.C. § 3582(c).  Effective December 21, 2018, section 603 of the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows incarcerated individuals to directly petition a district court for compassionate release. That provision now states:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>>
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed

> under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1) (italics reflecting amendment under First Step Act).

"Extraordinary and compelling reasons" that warrant a sentence reduction under § 3582(c)(1)(A) are exclusively defined by the United States Sentencing Guidelines' policy statement in U.S.S.G. § 1B1.13. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).  Pursuant to an amendment that became effective on November 1, 2023, § 1B1.13(b) lists the following extraordinary and compelling reasons:

> (1) Medical circumstances
> (2) Age
> (3) Family circumstances
> (4) Victim of abuse
> (5) Other reasons
> (6) Unusually long sentence.

U.S.S.G. § 1B1.13(b).  Each of these circumstances is further defined in the policy statement.  The policy statement definitions are binding on courts in this Circuit. *Bryant*, 996 F.3d at 1262.

If the Court finds that one of the circumstances listed in 18 U.S.C. § 3582(c)(1)(A) is present, it must consider all applicable factors listed in 18 U.S.C. §

3553(a) before it may reduce a defendant's sentence.[9] *See* § 3582(c)(1)(A); *United States v. Giron*, 15 F.4th 1343, 1347–48 (11th Cir. 2021) ("[A] district court need not analyze the § 3553(a) factors if it finds either that no extraordinary and compelling reason exists or that the defendant is a danger to the public.").

## III.   DISCUSSION

### A. Administrative Exhaustion

As a threshold matter, the Court finds that Trucchio has adequately exhausted his administrative remedies.  Under 18 U.S.C. § 3582(c)(1), a defendant must exhaust administrative remedies with the Bureau of Prisons prior to filing a motion for compassionate release.  "Section 3582(c)(1)(A) unambiguously provides that a defendant may either move for compassionate release after the defendant has fully exhausted administrative remedies *or* 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Smith*, 482 F. Supp. 3d 1218, 1223 (M.D. Fla. 2020) (emphasis in original) (quoting 18 U.S.C. § 3582(c)(1)(A)).  In his motion, Defendant represents that on March 17, 2021,

---

[9] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

he submitted a request for a sentence reduction to the Warden of FCI Schuykill, the BOP facility at which he was detained at the time. *See* Doc. 1072-2.

In its response, the Government acknowledges that the Defendant submitted applications for compassionate release in February and March 2021, both of which were denied by the Warden. The Government's response suggests that Defendant may not have fully exhausted his administrative remedies because he did not complete the third and fourth levels of appeal with the central office. Doc. 1078 at 8. Notwithstanding, the Government states the Court may proceed with analyzing the merits. At the hearing on Defendant's motion, the Government conceded that Defendant exhausted his administrative remedies. The Court agrees. More than thirty days have lapsed since Defendant submitted his request to the warden. The Court finds that Trucchio has satisfied the exhaustion requirement and will consider the merits of his motion.

## B. Extraordinary and Compelling Circumstances

Although Trucchio is over 70 years of age, he has not been incarcerated for at least thirty years. Therefore, he would not qualify for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(ii), and he must instead demonstrate an extraordinary and compelling reason to satisfy § 3582(c)(1)(A)(i).

Trucchio argues the following reasons establish extraordinary and compelling circumstances to justify a reduction in his sentence to time served: the serious physical and medical conditions from which he suffers, his age, the number of years he has served, his extraordinary rehabilitation, the continuing threat posed by COVID-19

14

given his age and medical condition, the conditions of confinement during the pandemic, the support he has received from BOP officials who believe he is fully rehabilitated and presents no danger, his participation in extensive rehabilitative programming, his character as reported through letters of support, his clean disciplinary record, and his service to the BOP facilities in which he has been incarcerated. He argues that under the amendments to the sentencing guidelines the Court has discretion to determine what is an extraordinary and compelling circumstance.

A defendant's medical condition may provide an extraordinary and compelling reason to support a reduction in sentence when the defendant is: (i) suffering from a serious physical or medical condition; (ii) suffering from a serious functional or cognitive impairment; or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13(b)(1)(B). In his motion, Defendant details his extensive medical conditions including: chronic, severe COPD with significant airway obstruction and dyspnea; spinal stenosis, spinal muscular atrophy and chronic back pain; acute osteoarthritis of his shoulders and extremities; degenerative joint disease, including a total left hip replacement and six other orthopedic surgeries; hyperlipidemia, high Caratine levels (indicative of liver disease) and chronic anemia; legal blindness for the past two to three years; high blood pressure (hypertension) that is only partially controlled through medication; largely wheelchair

15

bound/limited physical movement; an enlarged prostate and a weakened bladder. Doc. 1072-1 at 17–18. Additionally, Defendant recently provided medical records demonstrating he suffered an ischemic stroke in July 2024. Doc. 1090.

According to the Sentencing Commission's policy statement on compassionate release, the "Age of the Defendant" qualifies as an extraordinary and compelling reason to support a sentence reduction if the "defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. 1B1.13(b)(2).

Finally, "other reasons" support compassionate release when the defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. 1B1.13(b)(5).

At the hearing, the Government argued that although Defendant has numerous medical conditions, many of which predated his incarceration, he nevertheless is doing fairly well for a 73-year-old and is receiving medical treatment for his various conditions. The Government cites to the medical summary from Dr. Claudia Nassaralla that summarizes Defendant's medical history and opines that Trucchio's prognosis is good, his medical conditions are stable, and his life expectancy is indeterminate. Doc. 1078-4. Of note, Dr. Nassaralla's summary does not address the

Defendant's July 2024 stroke, and she did not supplement her opinion following that recent event.

Additionally, at the hearing, the Government conceded that Trucchio has a collection of health conditions that could be considered to be extraordinary and compelling reasons for compassionate release. Based upon the Court's review of the Defendant's motion, exhibits, and particularly the most recent medical records regarding Defendant having suffered an ischemic stroke, the Court agrees that Trucchio's medical circumstances constitute an extraordinary and compelling reason to support a reduction in his sentence. Defendant is 73 years old. He entered prison in 2003 with numerous medical conditions, but particularly over the last four years, he has clearly significantly declined as he has gone from placement in a Care Level 2 facility to being confined in the highest level of medical care in a Care Level 4 facility. Defendant's medical records and defense counsel's argument demonstrate that Trucchio is suffering from serious physical and medical conditions and is experiencing deteriorating physical health because of the aging process, that has substantially diminished his ability to provide self-care within the prison environment.[10]

For the same reasons, the Court finds Trucchio's age (73) constitutes an extraordinary and compelling circumstance warranting a reduction in sentence because he is older than 65 years, he is experiencing a serious deterioration in physical

---

[10] Despite the Government's representations that Defendant is getting continuous care, defense counsel noted that Defendant has been waiting years for cataract surgery, knee replacement surgery, hip replacement surgery, and hand surgery.

health because of the aging process, and he has served at least 10 years of his sentence. *See* U.S.S.G. 1B1.13(b)(2).

Although the Government is correct that the Defendant's rehabilitation alone is not an extraordinary and compelling reason for purposes of the policy statement, the Court has taken into consideration Defendant's significant evidence of rehabilitation while serving his sentence as a factor in combination with the other factors raised by Defendant in determining whether a reduction in his sentence is merited. *See* U.S.S.G. 1B1.13(d) ("rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted"). Trucchio has met his burden of establishing that extraordinary and compelling reasons justify compassionate release.

### C. Section 3553(a) Factors

Having found that Trucchio demonstrates extraordinary and compelling reasons for compassionate release, the Court must next consider the factors identified in 18 U.S.C. § 3553(a) to determine whether it can conclude that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3412(g)," U.S.S.G. § 1B1.13(2), and whether a reduction of his sentence is consistent with the Sentencing Commission's policy statements, 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) also requires a sentencing court to consider, among other factors, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and

18

protect the public. 18 U.S.C. § 3553(a)(2). It also requires the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), the sentencing range established by the sentencing guidelines, § 3553(a)(4)(A), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6).

Defendant has been incarcerated over twenty years, which weighs in favor of finding that his sentence reflects the seriousness of the offense, he has been justly punished for the offense he was convicted of, and that the punishment promotes respect for the law. His co-defendants have long been released from prison and the fact he was offered a 15-year plea deal weigh in favor of a reduction in his sentence to avoid sentencing disparities. Although the Court finds Defendant unlikely to reoffend given his deteriorating health, imposing a ten-year term of supervised release[11] should effectively deter any risk of reoffending. And, of note, the BOP has assessed Trucchio to be a low recidivism risk. Doc. 1074-5. In view of the § 3553(a) factors, reducing Defendant's term of imprisonment to time served with a ten-year term of supervised release is consistent with the applicable policy statements issued by the Sentencing Commission.

Trucchio's BOP disciplinary record shows that he has conducted himself well in prison.[12] Trucchio has been an exemplary, polite, and hard-working inmate; he has

---

[11] Defendant's judgment included a five-year term of supervised release.
[12] Trucchio had only four disciplinary infractions in his 20+ years of incarceration, and he has not had an infraction since July 2009. Doc. 1074-3 at 4. None of his infractions involved drugs, alcohol, violence, or BOP staff.

served as a leader, role model and mentor for younger inmates; he has obtained an associate's degree and has remained positive and productive notwithstanding he was facing a life in prison with no chance of release. The Court is persuaded by the letters of support received from his Chaplain and the BOP officials who interacted with Trucchio for years. Doc. 1074-5, Doc. 1074-2 at 2; Doc. 1074-4; Doc. 1074-6. Although the Government argues that Defendant's prior motion was denied because he was perceived to be a danger to the community if released, given Defendant's current medical condition, the Court finds the Defendant's situation has changed since his initial motion was filed and denied. Significantly, given his age and being incarcerated throughout the pandemic has taken a toll on Defendant's health the past four years such that the Court perceives he is much less likely to recidivate.[13] The fact that the Government was willing to offer Trucchio a 15-year pretrial plea deal further undercuts the Government's argument that Trucchio, who has now served over 21 years, still presents a danger to the community. Regarding his victims, they have been notified of Defendant's request for compassionate release and none have voiced objection or otherwise responded.

In support of its argument that Defendant still poses a threat, the Government introduced into evidence at the hearing a photograph of Trucchio with the crime boss John Gotti and others. Doc. 1095-2. As pointed out by the defense, the photograph

---

[13] As previously noted, when Trucchio's initial motion was denied in December 2020, the Court observed that he had been consistently in a Care Level 2 facility since his incarceration. Doc. 1050 at 9–10. As of the filing of the instant motion, Trucchio is in a Care Level 4 facility.

was taken over thirty years ago. A photograph from 1989 is not indicative of Defendant's criminal propensities today. Similarly, the Court finds the "making list" found on Trucchio's nightstand in 2002 to be unpersuasive evidence as to his likelihood to recidivate 22 years later. The phone log submitted by the Government which reflects that in 2023 Trucchio spoke with "Setaro," whom the Government represents has also been convicted of being involved in the criminal enterprise, may have potential relevance. But given that the Government has not provided a recording of the call, the Court finds the evidence to be speculative at best. For his part, Defendant represents that he and Setaro have been lifelong friends who have known each other since they were teenagers. Setaro is on Defendant's approved call list, they have had 10 phone calls in 21 years, and he has never visited Defendant in prison. The call log does not support the Government's argument that Trucchio will be a danger to the community if released.

Given Trucchio's age, his numerous medical conditions, his deteriorating health, his rehabilitative efforts, his letters of support from BOP officials, and his good behavior in prison, the Court is persuaded that Trucchio does not pose a danger to any other person or to the community.

## IV. CONCLUSION

The Court finds that Trucchio's age, serious medical conditions, declining health, and term of incarceration, including throughout the entirety of the pandemic, combine to constitute extraordinary and compelling reasons to grant his request for compassionate release. In granting his motion, the Court has carefully considered the

§ 3553(a) factors and concluded that the Government has failed to establish that given Trucchio's serious physical and medical conditions, along with his rehabilitation efforts, that he poses a danger to the safety of any person or the community. The Court further finds that a reduction in Trucchio's sentence to time served, with a ten-year term of supervised release, is consistent with the Sentencing Commission's policy statements.

The Government filed an amended and updated notice regarding the fine and statutory interest owed by Trucchio. Doc. 1100. Besides previously requesting that interest be waived for the restitution balance, Trucchio has not responded to the Government's updated notice. Under 18 U.S.C. § 3612(f), a "defendant *shall* pay interest on any fine or restitution of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of the judgment." 18 U.S.C. § 3612(f)(1) (emphasis added). The judgment is not required to express the default requirement that the defendant pay interest on the restitution ordered. *United States v. Rostan*, 565 F. App'x 798, 800 (11th Cir. 2014) (citing 18 U.S.C. § 3612(b)(1)). Neither the original judgment, nor Second Amended Judgment, reflected that interest was waived. *See* Docs. 703 at 5, 743 at 5. Accordingly, interest is due and owing on Trucchio's remaining fine balance.

Accordingly, it is hereby

**ORDERED**:

1.      Defendant's Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 1072) is **GRANTED**.

2.     The Court reduces Defendant Ronald J. Trucchio's term of imprisonment to **TIME SERVED**. Upon release from imprisonment, Defendant will begin a **ten-year term of supervised release**, subject to the mandatory, standard, and special conditions of supervised release, as set forth in Defendant's Second Amended Criminal Judgment at docket entry 743.

3.     The Court will enter a Third Amended Criminal Judgment reducing Trucchio's sentence to **TIME SERVED** and imposing a term of supervised release of **ten (10) years**.

4.     Restitution and assessments owed by this Defendant have been satisfied. Defendant owes a remaining balance on his fine of $20,728.59, plus statutory interest. *See* 18 U.S.C. 3612(f)(1).

5.     There being a verified residence and an appropriate release plan in place (Docs. 1097, 1103), Ronald Trucchio shall be released as soon as appropriate travel arrangements are made and it is safe for him to travel. There shall be no delay in ensuring travel arrangements are made.

**DONE AND ORDERED** in Tampa, Florida on November 22, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record
          Unrepresented Parties, if any
          Federal Bureau of Prisons, 320 First St. NW, Washington, DC 20534
          FMC Rochester, 2110 East Center Street, Rochester, MN 55904